

I N T H E

# Court of Appeals of Indiana

Ryan Gluys,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*



April 24, 2026

Court of Appeals Case No.
25A-CR-1488

Appeal from the Rush Circuit Court

The Honorable Brian D. Hill, Judge

Trial Court Cause No.
70C01-2405-CM-264

**Opinion on Rehearing by Judge May**
Judges Altice and Foley concur.

**May, Judge.**

We reversed Ryan Gluys's conviction of Class A misdemeanor invasion of privacy[1] based on the trial court's reliance on the wrong statutory definition of harassment when determining whether Gluys violated the protective order at issue. *Gluys v. State*, ___ N.E.3d ___, No. 25A-CR-1488, (Ind. Ct. App. Feb. 25, 2026) (hereinafter "Slip op."). The State of Indiana has now filed a petition for rehearing that argues we "overlooked a material provision of the protective order" that made all contact by Gluys improper, not just the alleged harassment that our opinion addressed. (Pet. for Reh'g at 4.) Based thereon, the State asserts it presented sufficient evidence to sustain Gluys's conviction even though the trial court relied on the wrong statutory definition of harassment.

In our original opinion, we noted Gluys had a child with Amanda Blackford, who thereafter became romantically involved with Nevada Benedict, and Benedict obtained a protective order for

> Benedict, Blackford, and three other members of their household. The Order "enjoined [Gluys] from threatening to commit or committing acts of domestic or family violence or harassment against" Benedict, Blackford, and the other members of their household. (Ex. Vol. at 4.)

Slip op. at 3. Then, when addressing Gluys's argument that the State failed to prove he committed the harassment required for a conviction of invasion of privacy as charged, we explained:

---

[1] Ind. Code § 35-46-1-15.1(a)(1).

The State asserts on appeal, as it argued at trial, that "the protective order, which was issued to prevent domestic or family violence or harassment, prohibited Gluys from having 'any contact' with Amanda (Tr. 13; Ex. 1)." (Br. of Appellee at 14); see also (Tr. Vol. II at 40-41). Neither Exhibit 1 nor page 13 of the Transcript provides evidence that the protective order prohibited all contact between Gluys and Blackford.

The protective order does prohibit Gluys "from harassing, annoying, telephoning, contacting, or directly or indirectly communicating with the Petitioner." (Ex. Vol. at 4.) However, the "Petitioner" was "Nevada Lee Benedict" not Blackford. (*Id.* at 3, 4.)

The protective order also indicated Gluys "may not communicate" with Blackford until a custodial order had been entered regarding Child. (*Id.* at 5.) However, a custody order was entered in August 2023, and the communications at issue did not occur until May 2024, which renders moot the "may not communicate" provision regarding Blackford in the protective order.

Accordingly, we reject the State's erroneous factual assertion that the protective order prohibited Gluys from having "any contact" with Blackford. Because the protective order did not prevent all contact between Gluys and Blackford, the State's references to the requirements of the Agreed Entry in the paternity proceedings are also irrelevant for purposes of determining whether Gluys committed invasion of privacy.

*Id.* at 8-9, n.4.

[3]     On rehearing, the State explains that its original brief on appeal directed us to the first page of the protective order because that first page states: "[t]he

Respondent/Defendant is restrained from any contact with the Petitioner/Protected Person." (Pet. for Reh'g at 4) (quoting Ex. Vol. at 3). The State also notes that same page of the order listed "Amanda Blackford" as one of the "Other Protected Persons[.]" (Ex. Vol. at 3.) Thus, asserts the State, those two provisions from page one of the order should be read together to prohibit Gluys from having any contact with Blackford, not just with the Petitioner Benedict, because Blackford is also a "Protected Person[.]" (*See* Pet. for Reh'g at 5.)

[4] If the protective order contained only the page relied on by the State, we would be inclined to read the protective order as the State has. The protective order is not, however, just one page, it is four pages, and immediately below the "any contact" language on page one that the State wishes us to read to include Blackford, the protective order provides: "Additional terms of this order follow on succeeding pages." (Ex. Vol. at 3.) The succeeding pages of the order included the following terms:

**ORDER**

**Section 1 – General Provisions**

1. The Respondent is hereby enjoined from threatening to commit or committing acts of domestic or family violence or harassment against the Petitioner and the following designated family or household members, if any:

Amanda Blackford; [A.T.]; [J.T.]; Tiffany Tidrow

2. The Respondent is prohibited from harassing, annoying, telephoning, contacting, or directly or indirectly communicating with the Petitioner.

\* \* \* \* \*

### Section 2 – Parenting Provisions

15. The Court now orders, under Ind. Code § 34-26-5-9(c)(2):

> d.  Parenting time shall be unsupervised and shall occur as follows:

>> Respondent may continue to have his parenting time while this protective order is in effect; however, Respondent may not communicate with Amanda Blackford regarding parenting time until Respondent and Ms. Blackford's paternity matter has been opened and a custodial order has been issued.

(Ex. Vol. at 4-5.)[2]

[5] The State has not attempted to explain how we reconcile this language from the second and third pages of the protective order with the interpretation the State wishes us to give the first page of the order, and this reconciliation was and is the task before us.  "A judgment is construed in the same manner as a contract would be." *Indiana & Michigan Elec. Co. v. Harlan*, 504 N.E.2d 301, 307 (Ind.

---

[2] We also note the remaining paragraphs on those pages of the protective order contained only "N/A" (Ex. Vol. at 4-5), which made these additional terms simple to identify.

Ct. App. 1987), *reh'g denied*, *trans. denied*.  We "read the judgment's provisions together in order to render the judgment effective." *Harbours Condo. Ass'n, Inc. v. Hudson*, 852 N.E.2d 985, 993 (Ind. Ct. App. 2006).  As we do so, "we may look at the entire record, including, but not limited to, the complaint, findings, and evidence to ascertain the judgment's meaning and effect." *Id*.  "[S]pecific terms control over general terms[,]" *Koressel Premier Elec., Inc. v. Forster*, 838 N.E.2d 1037, 1046 (Ind. Ct. App. 2005), and "an apparently inconsistent general statement must yield to the more specific term." *Id*.

[6] Paragraph 2 on the second page of the protective order prohibits Gluys from "directly or indirectly communicating with" only "the Petitioner[,]" who was Benedict.  (Ex. Vol. at 4.)  Paragraph 1 on that second page "enjoin[s] [Gluys] from threatening to commit or committing acts of domestic or family violence or harassment against" all members of Benedict's household, as listed explicitly, including Blackford.  (*Id*.)  Thus, these two paragraphs, which are specific to the parties herein, do not prohibit all contact between Gluys and Blackford; they prohibit harassment, domestic or family violence, or threats thereof.  The only way to construe these two paragraphs of the protective order to be consistent with language on the first page of the protective order is to interpret the "any contact" language from the first page to apply only to Benedict as "the Petitioner/Protected Person." (*Id*. at 3.)

[7] Moreover, Paragraph 15, on the third page of the protective order, explicitly permits Gluys to have contact with Blackford about parenting their child, if a custody order has been entered in a paternity case regarding their child.  As we

noted in our original opinion, a custody order had been entered regarding the child shared by Gluys and Blackford before Gluys sent the emails underlying the State's charge of invasion of privacy. Slip op. at 9, n.4. Regardless of whether the emails at issue were "regarding parenting" (Ex. Vol. at 5), the existence of this provision permitting contact between Gluys and Blackford contradicts the interpretation the State wishes us to give the language on the first page of the protective order.

[8] We grant rehearing to explain why we cannot interpret the protective order in the internally inconsistent manner advocated by the State. Instead, we interpret the language on the first page of the protective order in a manner consistent with the language used by the trial court in the remainder of the protective order, just as we did in our original opinion, and we reaffirm our original opinion in all other respects.

Altice, J., and Foley, J., concur.

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General
Indianapolis, Indiana

Andrew M. Sweet
Deputy Attorney General
Indianapolis, Indiana